UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTEK SECURITY & CONTROL LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SECURITY DATA SUPPLY, LLC,<br><br>Defendant. | Case No. 18-cv-05271-DMR<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: Dkt. No. 7 |

Plaintiffs Nortek Security & Control LLC ("Nortek") and Core Brands, LLC ("Core Brands") move to remand this case to the California Superior Court for Sonoma County. Having considered the parties' submissions and oral argument, the court grants Plaintiffs' motion.

**I.  BACKGROUND**

Nortek is a "manufacturer of smart connected devices and systems for residential, commercial, security, access control, and digital health markets." [Docket No. 1 Ex A (Compl.) ¶ 6.] Core Brands is a wholly owned subsidiary of Nortek. *Id.* Plaintiffs sell their products through distributors, who "purchase [Plaintiffs' products] for resale to retailers and installers." *Id.* at ¶ 7. Defendant Security Data Supply, LLC ("SDS") is one such distributor. *Id.* at ¶ 8.

Core Brands and SDS entered into an Authorized Domestic Distributor Agreement ("Agreement") on November 22, 2013, relating to the purchase and distribution of Core Brand's products. Compl. Ex. A. Paragraph 18 of the Agreement states as follows:

> Applicable Law and Forum for Disputes: This Agreement shall be construed under the laws of the State of California, without regard to its choice of law provisions.  In the event of any dispute hereunder, exclusive venue for the resolution thereof, including any action at law or in equity, shall be in Sonoma County, California.  Distributor hereby consents irrevocably to the exclusive jurisdiction of California courts in all respects.

Compl. Ex. A ¶ 18.

On July 12, 2018, Plaintiffs filed a breach of contract action in the California Superior Court for Sonoma County, alleging that SDS had not made payments due under the Agreement. Compl. ¶¶ 18-23. On August 28, 2018, SDS removed this action to the Northern District of California under diversity jurisdiction. Docket No. 1 (Notice of Removal). The parties do not dispute the general applicability of diversity jurisdiction based on citizenship or the amount in controversy.

Plaintiffs' motion to remand is based on the forum selection clause in the Agreement. Plaintiffs argue that the forum selection clause "unambiguously designates Sonoma County as the exclusive venue for this action," and the clause "serves as a waiver of [Defendant's] right to remove based on diversity jurisdiction." [Docket No. 7 (Motion) at 2.] SDS argues that the forum selection clause does not unequivocally specify state court in Sonoma County, and as Sonoma County is within the Northern District of California, the Agreement does not waive SDS's right to remove the action to federal court based on diversity jurisdiction. [Docket No. 10 (Opp. Br.)]

The parties further dispute what standard applies to reviewing a contractual waiver of the right of removal. SDS argues that the Ninth Circuit requires any waiver to be "clear and unequivocal," while Plaintiffs contend that contractual waivers (as opposed to litigation-based waivers) such as the one at issue here are evaluated under "ordinary contract principles." *See* Motion at 5; Opp. Br. at 2, 4.

## II. ANALYSIS

In a diversity case, federal law applies to the interpretation of a forum selection clause. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "[F]orum selection clauses are prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is 'unreasonable under the circumstances.'" *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972) (further internal quotations omitted).[1] "A district court may remand a case to

---

[1] SDS does not argue that enforcement would be unreasonable; rather, the instant dispute involves interpretation of the forum selection clause.

2

state court to effectuate a forum selection clause."[2] *Redwood Hill Farm & Creamery, Inc. v. Barry-Wehmiller Design Grp., Inc.*, No. 16-CV-03200-JST, 2016 WL 4710194, at *1 (N.D. Cal. Sept. 9, 2016) (quoting *Calisher & Assoc., Inc. v. RGCMC, LLC*, Nos. 08-cv-06523-MMM, 08-cv-06540-MMM, 2008 WL 4949041, at *2 (C.D. Cal. Nov. 17, 2008).

### A. Contractual Waiver of Right of Removal

"The Ninth Circuit has held that parties may waive the right to remove a case to federal court through actions taken during the course of state court proceedings ('litigation based waivers'), or through agreements made between the parties in forum selection clauses ('forum selection clause based waivers')." *Bastami v. Semiconductor Components Indus., LLC*, No. 17-CV-00407-LHK, 2017 WL 1354148, at *4 (N.D. Cal. Apr. 13, 2017). Litigation-based waivers require a "clear and unequivocal" waiver. *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994), *as amended* (Jan. 20, 1995). However, "in cases interpreting forum selection clauses, the Ninth Circuit has made no mention of the clear and unequivocal standard." *Bastami*, 2017 WL 1354148, at *4 (citing cases); *but see Paradigm Sols. Grp., Inc. v. Shanghai Precision Tech. Corp.*, No. 15-CV-539 JLS JLB, 2015 WL 3466017, at *2 (S.D. Cal. June 1, 2015) ("[A] party can waive its right of removal by agreeing to a contractual clause that gives a clear and unequivocal waiver of that right."); *Sloan v. Duchscherer*, No. 17-CV-06454-BLF, 2018 WL 3054801, at *2 (N.D. Cal. June 20, 2018) (same).

The court in *Bastami* performed a detailed analysis of the standard, pointing out several cases where the Ninth Circuit did not apply the "clear and unequivocal" standard in determining whether to remand a case to state court pursuant to a forum selection clause. *Bastami*, 2017 WL 1354148, at *4 (citing *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989) and *N. California*

---

[2] Plaintiffs argue that in the Ninth Circuit "there is a strong presumption against removal." That principle does not apply here. *See* Motion at 5-6. The parties do not otherwise dispute that jurisdiction is proper. The court is not held to the strict standard governing removal where jurisdiction is otherwise proper and the remaining dispute is interpreting a forum selection clause. *Kathy Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 3475665, at *3 n.1 (C.D. Cal. Aug. 11, 2017) (determining that applying the removal standard is inappropriate where jurisdiction is proper and the court is deciding whether or not to exercise it based on a forum selection clause).

3

*Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036 (9th Cir. 1995)). *Bastami* also examined how other circuits have decided the issue, pointing out that the Eleventh and Third Circuits have explicitly rejected the "clear and unequivocal" standard for contractual waivers, while the Sixth Circuit has adopted it. *Id.* *Bastami* cites with approval the discussion in *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999), which rejects the higher standard that applies to litigation-based waivers:

> We need not decide whether the clause rises to the level of a clear and unequivocal waiver because we do not agree that such a high standard is required or desirable. . . . [L]itigation-based waivers must be distinguished from the contractual waivers at issue in this case . . . . In the context of litigation-based waivers, the clear and unequivocal standard makes sense. Otherwise, parties would be put in the difficult position of, on the one hand, not taking any action in state court in order to preserve definitively the right to remove and, on the other hand, running the risk of a default judgment unless they take steps to defend the action in state court. When the issue is contractual waiver, however, this concern is not present. Indeed, requiring such a high standard . . . goes against the general trend of interpreting the removal statutes against removal and probably springs from the outdated notion that forum selection clauses are disfavored. Thus, in the context of removal based solely on diversity jurisdiction, ordinary contract principles govern a contractual waiver.

*Snapper*, 171 F.3d at 1260-61 (internal quotations omitted) (footnotes omitted).

The analysis in *Bastami* and *Snapper* is persuasive. The countervailing cases cited by SDS (*Paradigm* and *Sloan*, above) do not analyze the question of the governing standard, and appear to assume without examination that the same standard applies to both litigation-based waivers and contractual waivers. *See Paradigm Sols. Grp., Inc.* 2015 WL 3466017, at *2; *Sloan*, 2018 WL 3054801, at *2. The analysis in *Snapper* aligns with the modern public policy of enforcing forum selection clauses, and also details why litigation-based waivers warrant a higher bar than contractual waivers.

Therefore, the court finds that the "clear and unequivocal" standard does not apply to contractual waivers and analyzes this issue under ordinary contract principles.

### B. Construction of the Forum Selection Clause

Mandatory forum selection clauses require that "actions be brought only in that court," whereas permissive clauses merely permit jurisdiction in a specific court. *See N. California Dist.*

*Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036 (9th Cir. 1995). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *Id.* at 1037; *see also QSR Mgmt., Inc. v. Dunkin Brands, Inc.*, No. EDCV 08-0003 VAP OPX, 2008 WL 2856456, at *2 (C.D. Cal. Mar. 3, 2008) ("Under Ninth Circuit law, the court is not empowered to interpret an ambiguous forum selection clause, it must reject it to the extent it does not 'clearly designate' a particular forum as the exclusive venue.") (quoting *Merrell v. Renier*, No. C06-404JLR, 2006 WL 1587414, at * 3 (W.D. Wash. June 6, 2006)). In interpreting a forum selection clause, "[t]he plain language of the contract should be considered first, with the understanding that the common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it . . ." *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011) (citations and internal quotation marks omitted).

Plaintiffs argue that the clause at issue in this motion contains no ambiguity: "[W]here the forum selection clause clearly and unambiguously mandates that the venue for any action arising from the contract ***shall be in*** Sonoma County, California—and where there is no federal district court in that county—there is no ambiguity as to the intent of the parties concerning proper venue for this case in state court." Motion at 8 (emphasis in original). SDS argues that the forum selection clause does not unambiguously waive its right to remove the case, because the clause does not specify state court in Sonoma County, and Sonoma County is within the Northern District of California.

While no Ninth Circuit case speaks directly to the issue, *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) discusses the construction of the word "in" versus "of" in interpreting forum selection clauses. The clause in that case specified that "exclusive jurisdiction . . . resides in the courts of Virginia." *Doe 1*, 552 F.3d at 1080. The court first examined the use of the word "of":

> Black's Law Dictionary defines "of" as a term "denoting that from which anything proceeds; indicating origin, source, descent, and the like...." *Black's Law Dictionary* 1080 (6th ed.1990). Thus, courts "of" Virginia refers to courts proceeding from, with their origin in, Virginia—i.e., the state courts of Virginia. Federal district courts, in contrast, proceed from, and find their origin in, the federal government.

5

*Id.* at 1082 (footnotes omitted). The court contrasted it with the definition of "in":

> In contrast, the proposition "in" "express[es] relation of presence, existence, situation, inclusion, action, etc.; enclosed or surrounded by limits, as in a room; also meaning for, in and about, on, within etc. ...." *Black's Law Dictionary* 758 (6th ed.1990).

*Id.* at 1082 n. 8. In other words, "of" denotes sovereignty while "in" refers to physical location. The court accordingly held that "the plain meaning of the forum selection clause's designation of the 'courts of Virginia' is the state courts of Virginia; it does not include federal district courts located in Virginia." *Id.* at 1082.

The other key Ninth Circuit case is *Simonoff*, where the court examined a forum selection clause in which the parties agreed to the "exclusive jurisdiction and venue of courts in King County, Washington." *Simonoff*, 643 F.3d at 1205. Citing *Doe*, the court found that the phrase "courts in" a state "includes any court within the physical boundaries of the state, even if the court does not derive its power and authority from the sovereignty of the state." *Id.* at 1206. *Simonoff* affirmed the district court in declining to remand the case, holding that a "forum selection clause that vests 'exclusive jurisdiction and venue' in the courts 'in' a county provides venue in the state and federal courts located in that county." *Id.* at 1207. However, *Simonoff* did not examine situations like the present one, where the forum selection clause requires venue in a county where there is no physical federal courthouse.

SDS mainly relies on two cases. In *Merrell v. Renier*, No. C06-404JLR, 2006 WL 1587414 (W.D. Wash. June 6, 2006), the forum selection clause provided that "venue . . . will reside in the United States and in the county of residence of the non-breaching party." *Merrell*, 2006 WL 1587414 at *1. The county at issue was Snohomish, which is located in the Western District of Washington but does not have a physical federal courthouse. *Id.* at *1-2. The court reasoned that the term "venue" can encompass more than merely the physical location of a courthouse. *Id.* at *2. Determining that the forum selection clause was "at best . . . ambiguous," the court denied the plaintiff's motion to remand. *Id.* at *3.

*Merrell* was decided before *Doe* and *Simonoff*, and at least one Northern District court has determined that *Merrell* conflicts with subsequent Ninth Circuit caselaw. *See FCE Benefit*

6

*Administrators, Inc. v. Training, Rehab. & Dev. Inst., Inc.*, No. 15-CV-01160-JST, 2015 WL 2173744, at *3 (N.D. Cal. May 7, 2015). The *FCE* court explained that in *Simonoff*, the Ninth Circuit reasoned that "when a federal court sits in a particular county, the district court is undoubtedly 'in' that county." 643 F.3d at 1206. The court in *FCE* determined that it would be irrelevant for *Simonoff* to refer to the physical location of the courthouse unless the absence of a physical federal courthouse meant that the district court was not in that county. *See FCE*, 2015 WL 2173744 at * 3; *Simonoff*, 643 F.3d at 1206.

SDS also cites *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 11CV2119, 2012 WL 12896218 (S.D. Cal. Jan. 26, 2012). In *Sony*, the forum selection clause specified that "any dispute arising from or relating to this Agreement shall be brought in a court within San Mateo County, California." 2012 WL 12896218 at *1. San Mateo County does not have a federal courthouse. *Id.* Citing *Merrell*, the *Sony* court found that "the Northern District of California San Mateo County and thus rejects Plaintiffs' argument that the clause precludes federal court due to the lack of an actual, brick-and-mortar federal courthouse in San Mateo County." *Id.* at * 2. As Plaintiffs point out, *Sony* relied on *Merrell*, which is on shaky ground after *Simonoff*. Reply at 6; *see FCE*, 2015 WL 2173744 at *3. For these reasons, neither *Merrell* nor *Sony* are helpful.

The court instead is persuaded by the reasoning expressed in *FCE*, where the court interpreted the clause "venue . . . will be San Mateo County, California." 2015 WL 2173744, at *2. The *FCE* court found that, given the language in the clause and that San Mateo County does not have a physical federal courthouse, "the clause unambiguously requires that dispute under the agreement be resolved in San Mateo County Superior Court." *Id.* The *FCE* court concluded that "the weight of authority in this Circuit supports the proposition that in construing a forum selection clause, a federal district court cannot be considered to be "in" a county over which the district court has jurisdiction, but in which the district court does not have a physical presence." *Id.* (citing cases).

Similarly, in *North American Air Force v. Rose*, the court examined the phrase "[v]enue . . . will be in Newton County, Mississippi," and determined that "[t]here are no federal courts situated in Newton County, Mississippi, so the clause was clearly intended to limit venue to the state court

7

located in the county, which is where Rose filed his complaint alleging breach of contract." *N. Am. Air Force v. Rose*, No. C 01-2495 SI, 2001 WL 1155078, at *2 (N.D. Cal. Sept. 17, 2001).

Other cases in the Eastern and Central Districts also align with Plaintiffs' position. *See, e.g.*, *Turner v. CRC Ins. Servs., Inc.*, No. CV102519JFWPJWX, 2010 WL 11598028, at *2 (C.D. Cal. May 6, 2010) (remanding where the parties' forum selection clause required "[a]ny action . . . shall be instituted and determined exclusively in the courts of Los Angeles County and the State of California"); *Stone v. Cty. of Lassen*, No. 2:12-CV-01946-MCE, 2013 WL 269085, at *3 (E.D. Cal. Jan. 23, 2013) ("A forum selection clause stating that venue "shall be in" a particular county means that venue lies in state court when there is no federal court that that particular county—even though that county may be part of a judicial district whose courthouse lies elsewhere.").

Finally, at the November 8, 2018 hearing, SDS argued that the forum selection clause cannot reasonably be interpreted to restrict venue to Sonoma County Superior Court. According to SDS, under *Simonoff*, the clause at issue would indisputably allow removal to federal district court if there were in fact a federal district court in Sonoma County. Therefore, any parties entering into a contract with a forum selection clause like the one at issue would have to know (1) where Sonoma County is and (2) whether there is a physical federal district court in that county, because the same clause could result in different outcomes depending on that external fact.

A contract's reference to or dependence on the existence of extrinsic factors does not on its own render the language of the contract ambiguous. The contract in *Simonoff*, referencing "courts in King County, Washington," was not found to be ambiguous, even though the Ninth Circuit relied on the external fact that there is a federal district courthouse physically located in King County. *See Simonoff*, 643 F.3d at 1207.

In sum, the court interprets the phrase "exclusive venue … shall be in Sonoma County, California" as requiring that the case be filed in the state court in Sonoma County, because there is no physical federal district court in that county.

//

//

//

8

## III. CONCLUSION

The forum selection clause at issue unambiguously vests exclusive venue in Sonoma County Superior Court, and not in the United States District Court for the Northern District of California. Plaintiffs' Motion to Remand is GRANTED.

**IT IS SO ORDERED.**

Dated: December 6, 2018



Judge Donna M. Ryu
United States Magistrate Judge